UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| **FRANCINE COLE** both individually and as Co-Administrator for the Estate of Annie L. Cole, <br><br> Plaintiff, <br><br> v. <br><br> **WELLS FARGO BANK, N.A., GWENDOLYN COLE-HOOVER** and **KEVIN TODD JOHNSON,** <br><br> Defendant. | Civ. No. 12-1932 (KM) (MAH) <br><br> **OPINION** |

**KEVIN MCNULTY, U.S.D.J.:**

The plaintiff, Francine Cole ("Cole"), brought this action against Defendants Wells Fargo Bank, N.A. ("Wells Fargo"); her sister, Gwendolyn Cole-Hoover ("Hoover"); and her nephew, Kevin Todd Johnson ("Johnson"). This action is part of a larger series of disputes between the sisters about their inheritance. Here, Cole alleges that Wells Fargo improperly allowed Hoover and Johnson to withdraw $62,000 from a home equity line of credit (HELOC) account.

Now before the court are cross-motions for summary judgment: (1) Wells Fargo's motion against Cole (Dkt. No. 94), and (2) Cole's motion against Wells Fargo (Dkt. No. 97). For the reasons set forth below, summary judgment is granted in favor of Wells Fargo on all claims.

**I.  BACKGROUND**

Francine Cole and her sister, Gwendolyn Cole-Hoover, are co-administrators of the estate of their mother, Annie Cole, who passed away in 2001. (Supplemental Certification of Aaron M. Bender, Esq. in Opposition to

1

Plaintiff's Motion for Summary Judgment, dated June 1, 2015, Dkt. No. 101-2 ("Bender Supp. Cert."), Ex. A Tr. of Deposition of Francine Cole, Feb. 18, 2013 ("Cole Dep. Tr.") 106:21-107:7) Part of the estate is a piece of real estate located at 21 Liberty Street, Morristown, New Jersey (the "Property"). The Property was purchased by Annie Cole and her husband in the mid-1950s; it was Cole and Hoover's childhood home. (*Id.* 10:14-17, 13:17-19) The Property is divided into two apartment units, each occupying a floor. (*Id.* 14:21-15:4)

Cole has lived at the Property since 1997. (*Id.* 10:18-20) Until 2010, Cole rented one of units and made various renovations to the Property. The last tenant rented the top-floor apartment for $1,200 a month in April 2010 but moved out after a few months. (*Id.* 39:21-25, 40:18-20; Certification of Kenneth Rosellini in Support of Notice of Motion for Summary Judgment, dated May 22, 2015, Dkt. No. 97-1 ("Rosellini Cert."), Ex. B Cole Answers to Defendant Wells Fargo Bank, N.A.'s First Set of Interrogatories ("Interrogatory Responses"), at Response No. 6)

On November 10, 2006, Cole and Hoover executed a note in the amount of $126,488, secured by a first lien on the Property. (Wells Fargo Statement of Facts, Dkt. No. 94-2 ("WF Facts") ¶ 8; Certification of Allison J. Hansen in Support of Wells Fargo's Motion for Summary Judgment, dated April 2, 2013, Dkt. No. 94-10 ("Hansen Cert.") ¶¶ 5-6, Exs. A, B) A corresponding mortgage on the Property was recorded by the Clerk of Morris County on December 18, 2006. (Hansen Cert., Ex. B) This was a refinancing; the proceeds of this Wells Fargo loan paid off a mortgage held by Washington Mutual and an existing Wachovia Prime Equity Line of Credit. (*Id.*, Ex. J)[1]

On November 22, 2006, Cole and Hoover executed a Prime Equity Line of Credit & Disclosure Statement to secure a new $125,000 HELOC. (WF Facts ¶ 11; Hansen Cert. ¶ 9, Ex. E) This HELOC was secured by a second lien against the Property which was recorded by the Clerk of Morris County on January 2,

---

[1] Wells Fargo acquired Wachovia in 2008.

2

2007. (Hansen Cert. ¶ 10, Ex. F) As co-signatories, both Cole and Hoover had a right to withdraw funds from the HELOC account.

Disputes arose between Cole and Hoover with respect to the Property inherited from their mother. On January 22, 2009, the Honorable Catherine Langlois of the Superior Court of New Jersey, Chancery Division, Probate Part, Morris County, ordered that the Property be listed for sale. (Certification of Aaron M. Bender, Esq. in Support of Wells Fargo's Motion for Summary Judgment, dated May 14, 2015, Dkt. No. 94-3 ("Bender Cert."), Ex. A) That Court order also required Cole to pay various expenses out of the home equity line of credit, including real estate taxes, sewer and water charges, mortgage payments, any realtor recommended upgrades and repairs to ready the home for sale, and the cost to rent a dumpster to clean out the Property. (*Id.* at ¶ 7) Cole testified that the real estate agent recommended that to make the Property meet market standards, repairs were needed to the bathroom, kitchen and floors. (Cole Dep. Tr. 122: 4-13, 144:10-17)

From 2006 to 2010, Cole drew down approximately $98,000 of the HELOC funds. Cole used those funds to make various repairs to the property, to pay for funeral expenses for one of her sisters, to pay taxes on family property in South Carolina, and for attorney's fees. (WF Facts ¶ 14; Cole Dep. Tr. 153:8-20)

On February 24, 2010, Hoover granted Johnson a Power of Attorney. (WF Facts ¶ 15; Rosellini Cert., Ex. J) Johnson soon learned that approximately $62,000 remained in the HELOC account. Hoover instructed Johnson to remove those remaining funds from the HELOC account and to place them in a separate Wells Fargo account in Hoover's name. (Bender Cert., Ex. F, Dep. Tr. of Kevin Todd Johnson, dated Mar. 4, 2013 ("Johnson Dep. Tr."), 48:16-23) Johnson did so. Cole apparently learned that the HELOC account had been emptied only when a check she wrote to a contractor bounced. (Cole Dep. Tr. 160:17-22)

Cole complained to Wells Fargo that Johnson's Power of Attorney from Hoover was invalid and that the withdrawal of the funds was therefore

improper. Wells Fargo returned the money to the account while it investigated the situation. (WF Facts ¶ 18) During the course of its investigation, Wells Fargo generally froze the HELOC account, but permitted Cole to withdraw $10,000 to meet certain obligations. (*Id.* ¶ 19; Cole Dep. Tr. 167:15-21) Cole wrote Wells Fargo requesting to have the account reopened. (WF Facts ¶ 21)

In the cover sheet for one of those letters, faxed on March 3, 2011, Cole stated "I HOPE WE CAN RESOLVE THIS MATTER TODAY SO THIS ACCOUNT BE IMMEDIATELY REINSTATED, AS IT WAS ILLEGALLY CLOSED, FRUSTRATING OUR PURPOSE FOR OPENING IT." The attached letter acknowledges that Johnson's power of attorney from Hoover was valid; specifically, Cole "confirmed that the power of attorney (poa) my sister, Dr. Gwendolyn Cole-Hoover, gave Kevin Todd Johnson, naming him, as her agent, is a legal, binding, durable power of attorney." (*Id.* ¶ 22; Hansen Cert., Exs. G, H) Wells Fargo therefore complied with Cole's request that the account be reinstated. Very soon thereafter, in April 2011, Johnson (on behalf of Hoover) removed the funds from the HELOC account and transferred them to another bank (*i.e.*, not Wells Fargo), where they were placed into an account held jointly by Hoover and Johnson. (WF Facts ¶ 23; Johnson Dep. Tr. 159:8-14)

Cole sent additional written communications to Wells Fargo after this second removal of the funds. On April 25, 2011, Cole complained to Wells Fargo about being denied access to the account and for not having been told by Wells Fargo that the account had been reinstated. (Rosellini Cert., Ex. A at 3-4) Cole expressed concern that Hoover was notified of the account reinstatement while she was not. Cole refers to an earlier RESPA request for the "original instrument of indebtedness" (*id.*), although it is not attached to her papers. On April 28, 2011, Cole requested the "original instrument of indebtedness." (*Id.* at 2) Cole sent an additional letter on the same day, but that letter did not request any documents; it accused Wells Fargo of "collud[ing] with corrupt officials by allowing a stranger who crossed state lines to walk into the bank and take all the funds out of a personal credit line with my name on it that the bank had

4

closed." (Bender Cert., Ex. C) Then, on June 2, 2011, Cole again requested the "original, ink-signed" instruments of indebtedness. (Rosellini Cert., Ex. A at 5) On September 7, 2011, Wells Fargo responded to Cole's communications attaching a copy of the Note and HELOC agreement. (Hansen Cert., Ex. J)

Additionally, after the removal of the funds, Cole stopped making payments on her loans (the first mortgage and the HELOC) with Wells Fargo. (*Id.* ¶ 24; Cole Dep. Tr. 135:21-136:11) Cole also ceased paying taxes and insurance on the Property. (Cole Dep. Tr. 137:19-23)

As a result of Cole's failure to make mortgage payments since October of 2010, Wells Fargo sent a notice of foreclosure on the Property, but no foreclosure complaint was filed. (Cole Dep. Tr. 142:8-24) Additionally, at the end of 2012, Cole received a tax sale notice for the Property, but no tax sale took place. (*Id.* 143:2-144:2)

On March 20, 2012, Cole filed the original complaint in this action. (Dkt. No. 1) The action was assigned to District Judge Hochberg. On April 22, 2012, Judge Hochberg dismissed the original complaint, which pled only state-law causes of action, for lack of subject matter jurisdiction because the parties were not of diverse citizenship. On May 8, 2012, Judge Hochberg reopened the matter on consent of the parties following Cole's request to file an amended complaint containing federal-law causes of action. (Dkt. Nos. 8, 9, 13)

On May 10, 2012, Cole filed her Amended Complaint. (Dkt. No. 14) The eleven-count Amended Complaint asserts the following causes of action: breach of contract; breach of fiduciary duty; fraud; conversion; quiet title; unconscionable contract; violation of the New Jersey Consumer Fraud Act, N.J.S.A. 56:8-2 et seq.; tortious interference with inheritance; intentional infliction of emotional distress; and one count alleging violations of the Real Estate Settlement Procedure Act, 12 U.S.C. § 2605, and the Truth In Lending Act, 15 U.S.C. § 1666(a).

Hoover, Johnson and Wells Fargo filed answers to the Amended Complaint on June 5 and 11, 2012. (Dkt. Nos. 15, 19) Discovery was had, and was closed on April 16, 2015. (Dkt. No. 86) On May 14, 2015, Wells Fargo filed

its motion for summary judgment. (Dkt. No. 94) Cole moved for summary judgment on May 22, 2015. (Dkt. No. 97) Wells Fargo filed an opposition to Cole's summary judgment motion on June 1, 2015. (Dkt. No. 101) Cole filed an opposition to Wells Fargo's summary judgment motion on July 3, 2015.[2] (Dkt. No. 103)

## II.   JURISDICTION

This Court has federal-question subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1331 because the Amended Complaint asserts a claim under two federal statutes, 12 U.S.C. § 2605 and 15 U.S.C. § 1666. Supplemental jurisdiction is asserted over the state law claims pursuant to and 28 U.S.C. § 1367.

## III.   LEGAL STANDARDS

### a. Summary Judgment Standard

Federal Rule of Civil Procedure 56(a) provides that summary judgment shall be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *Kreschollek v. S. Stevedoring Co.*, 223 F.3d 202, 204 (3d Cir. 2000). In deciding a motion for summary judgment, a court must construe all facts and inferences in the light most favorable to the nonmoving party. *See Boyle v. Cnty. of Allegheny Pa.*, 139 F.3d 386, 393 (3d Cir. 1998). The moving party bears the burden of establishing that no genuine issue of material fact remains. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986). "[W]ith respect to an issue on which the nonmoving party bears the burden of proof ... the burden on the moving party may be discharged by 'showing'—that is, pointing out to the district court—that there is an absence of evidence to support the nonmoving party's case." *Celotex*, 477 U.S. at 325.

---

[2]   Wells Fargo has objected to Cole's late-filed opposition and requests that its motion for summary judgment be deemed unopposed. (Dkt. No. 104) Seeing no particular prejudice, I will consider the late-filed opposition.

Once the moving party has met that threshold burden, the non-moving party "must do more than simply show that there is some metaphysical doubt as to material facts." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). The opposing party must present actual evidence that creates a genuine issue as to a material fact for trial. *Anderson*, 477 U.S. at 248; *see also* Fed. R. Civ. P. 56(c) (setting forth types of evidence on which nonmoving party must rely to support its assertion that genuine issues of material fact exist). "[U]nsupported allegations ... and pleadings are insufficient to repel summary judgment." *Schoch v. First Fid. Bancorporation*, 912 F.2d 654, 657 (3d Cir. 1990); *see also Gleason v. Norwest Mortg., Inc.*, 243 F.3d 130, 138 (3d Cir. 2001) ("A nonmoving party has created a genuine issue of material fact if it has provided sufficient evidence to allow a jury to find in its favor at trial."). If the nonmoving party has failed "to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial, ... there can be 'no genuine issue of material fact,' since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." *Katz v. Aetna Cas. & Sur. Co.*, 972 F.2d 53, 55 (3d Cir. 1992) (quoting *Celotex*, 477 U.S. at 322–23).

## IV.  ANALYSIS

### A. **Breach of Contract**

In Count 1 of the Complaint, Cole alleges that Wells Fargo breached the HELOC Agreement when it failed to restrict Hoover and Johnson's access to the funds and also when it restricted Cole's access to the account. Under New Jersey law, a breach of contract claim requires proof of three elements: (1) the existence of a valid and enforceable contract, (2) a breach of that contract, and (3) damages. *See Murphy v. Implicito*, 920 A.2d 678, 689 (N.J. Super. Ct. App. Div. 2007).

This is a joint account. Pursuant to the terms of the HELOC Agreement, to which both Cole and Hoover were signatories, either could draw on those

funds. (Hansen Cert., Ex. E) In the event of termination or suspension of the account, Wells Fargo was authorized to dishonor a request for a credit advance. (*Id.* p. 3) The HELOC Agreement authorized either Cole or Hoover to request reinstatement of withdrawal privileges in the event they were suspended. (*Id.* p. 8)

In short, none of the actions taken by Wells Fargo breached the HELOC Agreement. Hoover had a right to access the funds in the HELOC account. She did so through Johnson, *via* a legal and binding power of attorney. Hoover herself does not contest or repudiate Johnson's right to act on her behalf.

Cole herself was the catalyst for the suspension of the account when she officiously notified Wells Fargo that Hoover's power of attorney was not valid. Wells Fargo cautiously returned the withdrawn $62,000 to the HELOC account and suspended access while investigating Cole's claims, in compliance with its reservation of rights to do so under the HELOC Agreement. That Cole would be deprived of access to the account during this brief period of investigation is contemplated by the HELOC Agreement. Cole herself confirmed in writing that the power of attorney was, in fact, legal and binding. Wells Fargo then reinstated full access to this joint account.

That Hoover (through Johnson) immediately again withdrew the $62,000 balance was no doubt irritating to Cole. It cannot be said, however, to be the fault of Wells Fargo or to constitute a breach of the HELOC Agreement. Either party had the right to draw on the account.

Accordingly, I find there are no genuine issues of fact with respect to this claim and grant summary judgment in favor of Wells Fargo on Count 1.

### B. **Breach of Fiduciary Duty**

Count 2 alleges that, in failing to restrict Hoover and Johnson's access to the account and in restricting Cole from accessing the account, Wells Fargo breached a fiduciary duty owed to Cole. "The general rule is that there are no presumed fiduciary relations between banks and their customers." *Margulies v. Chase Manhattan Mortg. Corp.*, 2005 WL 2923580, at *3 (N.J. Super. Ct. App.

Div. Nov. 7, 2005); *Galayda v. Wachovia Mortg. FSB*, 2010 WL 5392743, at *13 (D.N.J. Dec. 22, 2010) (noting that "it is well established that a bank does not owe a legal duty to a borrower"). Creditor-debtor relationships "rarely give rise to a fiduciary duty" because of the adversarial nature of the relationship between a lender and a borrower. *United Jersey Bank v. Kensey*, 704 A.2d 38, 44 (N.J. Super. Ct. App. Div. 1997). An exception arises under "special circumstances" where the lender "knows or has reason to know that the customer is placing his trust and confidence in the lender and relying on the lender to counsel and inform him." *Id.* at 45.

Here, Cole has not identified any exceptional facts or case law which would heighten this creditor-debtor relationship with Wells Fargo to a fiduciary level. Cole, along with her sister, Hoover, were borrowers and party to an arms-length transaction with Wells Fargo whereby each was bound by the terms of the HELOC Agreement. Cole suggests that, as a long-time customer of the bank, she should have been treated better. That is not an exceptional circumstance warranting a finding that the relationship between Cole and Wells Fargo was a fiduciary one.

Cole also seems to suggest that she relied on the advice of a Wells Fargo employee, Scott Wright, when entering into the HELOC Agreement. Cole provides no evidence, however, that Mr. Wright purported to act on her behalf, or indeed that he acting in the interest of anyone except his employer, Wells Fargo.

Cole has pointed to no evidence sufficient to overcome the presumption that this was an ordinary lender-borrower relationship, and not a fiduciary one. There are no genuine issues of fact and summary judgment is granted on this count in favor of Wells Fargo.

### C. **Fraud**

Count 3 of the Complaint alleges that Wells Fargo made fraudulent statements to the effect that it would restrict access to the HELOC funds to prevent improper removal of those funds. To establish common law fraud, a plaintiff must prove: (1) a material misrepresentation of a presently existing or

past fact, (2) knowledge or belief by the defendant of its falsity, (3) an intention that the other person rely on that misrepresentation, (4) reasonable reliance thereon by the other person, and (5) resulting damages. *See Gennari v. Weichert Co. Realtors*, 691 A.2d 350, 367 (N.J. 1997).

Cole has provided no evidence in support of her claim. She and Hoover had equal rights to obtain advances from the HELOC account. Cole conceded in writing that the basis for her complaint, which resulted in the temporary suspension of access to the account—the alleged invalidity of the Johnson's power of attorney—was untrue. Wells Fargo therefore properly restored access under the terms of the HELOC Agreement, which had not been amended or changed in any way. Hoover and Johnson's subsequent withdrawal of funds involved no wrongdoing by Wells Fargo; the bank was authorized, indeed required, by the HELOC Agreement to permit either party to make withdrawals. Accordingly, it cannot be maintained that Wells Fargo made a material misrepresentation that it would do something it did not do.

At her deposition, Cole asserted that the fraud consisted of forgery of her signature on a document. (Cole Dep. Tr. 206:13-16) Cole could not identify the document, nor could she identify any harm caused to her as a result of the alleged forgery. (*Id.* 206:17-208:10)

Because Cole has provided no evidence in support of her fraud claim, summary judgment will be granted in favor of Wells Fargo on Count 3.

### D. **Quiet Title**

In Count 6, Cole alleges a "quiet title" claim, asserting that the liens on the Property are invalid and unenforceable. Pursuant to New Jersey's quiet title statute, a plaintiff may maintain an action to "clear up all doubts and disputes concerning" the ownership of land. N.J.S.A. § 2A:62-1.

Here, Cole has simply alleged, with no evidentiary support, that the November 10, 2006 note and related mortgage and the November 22, 2006 mortgage securing the HELOC are invalid. Even as allegations these would be insufficient to state a claim for quiet title; considered as proofs, they are insufficient to bar summary judgment. *See Gonzalez v. U.S. Bank Nat'l Ass'n*,

2015 WL 3648984, at *4-5 (D.N.J. June 11, 2015) (dismissing quiet title claim based solely on conclusory allegations that loan documents were invalid).[3]

At her deposition, Cole acknowledged the genuineness of her signature on the note, HELOC agreement and the corresponding two mortgages. (Cole Dep. Tr. 114:23-25, 120:23-25; 139:1-4, 140:6-8) Undisputed public records demonstrate that the mortgage for the $126,488 note was duly recorded on December 18, 2006. (Hansen Cert. ¶ 6) The mortgage for the $125,000 HELOC account was recorded on January 2, 2007. (Hansen Cert. ¶ 10)

Cole testified that she made monthly payments on the mortgage from 2006 until the incident in 2010: at no time did Cole indicate to Wells Fargo that she believed the mortgage was invalid, or that her payments were gratuitous or in error. Over the years, Cole also drew freely on the HELOC, secured by the second lien, to the tune of some $90,000. And of course neither party contends that the loans have been paid off.

There is no evidence supporting the "quiet title" claim. Accordingly, summary judgment in favor of Wells Fargo on this count is appropriate.

### E. Unconscionable Contract

Count 7 asserts a cause of action for unconscionable contract. This claim is premised on the allegation that the loan was based on the property's value (presumably, as opposed to the mortgagor's ability to pay).

Under New Jersey law, "a contract is unconscionable if its terms are manifestly unfair or oppressive and are dictated by a dominant party." *Howard v. Diolosa*, 574 A.2d 995, 999 (N.J. Super. Ct. App. Div. 1990) (citing *Kuzmiak v. Brookchester*, 111 A.2d 425 (N.J. Super. Ct. App. Div. 1955)). To establish unconscionability, a plaintiff must show "overreaching or imposition resulting from a bargaining disparity between the parties," or "patent unfairness" such that "no reasonable person not acting under compulsion or out of necessity

---

[3] No one appears to be contesting the validity of the mortgage liens except Cole herself. Thus, the need to "quiet title" seems dubious. *See Schiano v. MBNA*, No. 05-1771 2013 WL 2452681, at *26 (D.N.J. Feb. 11, 2013) (Hammer, U.S.M.J.) (dismissing quiet title claim based on bald assertion of invalidity of mortgage, and no party except plaintiff contested the validity of the mortgage).

11

would accept its terms." *Id.* at 999-1000 (citing *Rotwein v. Gen. Accident Grp. & Cas. Co.*, 247 A.2d 370 (N.J. Super. Ct. Law. Div. 1968)).

Here, Cole alleges unconscionability based on the loan's having been collateralized by the value of the Property. Nothing about her allegations appears to distinguish this loan from any other home mortgage or HELOC. Cole has not set forth any evidence that the loan payments were unfair or oppressive. In fact, Cole testified that she made the first mortgage payments for four years, from 2006 to 2010; in addition, she and her sister drained another $150,000 in equity from the property *via* the HELOC.

Cole has failed to establish an issue of material fact concerning the claim of unconscionability. Summary judgment is therefore granted in favor of Wells Fargo on this claim.

### F. Consumer Fraud

Count 8 presents a claim for consumer fraud under New Jersey's Consumer Fraud Act ("NJCFA"), N.J.S.A. § 56:8-2 et seq. This count appears to be related to the unconscionable contract count, as Cole asserts that Wells Fargo improperly originated a loan that the signatories were incapable of paying for. (Opp. Br. p. 17)

To assert a claim under the NJCFA, a plaintiff must allege unlawful conduct, ascertainable loss of money or property, and a causal relationship between the conduct and the loss. *See Bosland v. Warnock Dodge, Inc.*, 197 N.J. 543, 557 (2009). Unlawful conduct is defined by the statute to be the

> use or employment by any person of any unconscionable commercial practice, deception, fraud, false pretense, false promise, misrepresentation, or the knowing, concealment, suppression, or omission of any material fact with intent that others rely upon such concealment, suppression or omission, in connection with the sale or advertisement of any merchandise or real estate[.]

N.J.S.A. § 56:8-2. Ascertainable loss is loss that is "not hypothetical or illusory," but is rather "capable of calculation." *Thiedemann v. Mercedes-Benz USA, LLC*, 872 A.2d 783, 792-93 (N.J. 2005) (noting that a claim of loss must be supported by sufficient evidence).

As noted above, Cole has provided no evidence of fraudulent or illegal conduct by Wells Fargo. Cole did make payments on the loan from 2006 through 2010. Moreover, Cole has not provided any evidence that she has suffered ascertainable loss in connection with the loan. Cole alleges that the value of the Property has decreased, that she received a foreclosure and tax sale notice on the Property and that her credit has been ruined, but she has not provided any evidence to substantiate those claims. At any rate, she appears to concede that blame lies not with Wells Fargo, but with her relatives. (Cole Dep. Tr. 192:1-6) Any lack of funds seems to be the result of her dispute with her sister.

Accordingly, summary judgment in favor of Wells Fargo is appropriate on Count 8.

### G. Tortious Interference with Inheritance

Count 9 asserts a cause of action for "tortious interference with inheritance." Cole contends that in permitting Hoover and Johnson to remove the funds from the HELOC account, Wells Fargo "stripp[ed] equity from the Estate of Annie L. Cole and plac[ed] the corpus of the estate in distress." (Compl. ¶ 106) Cole also asserts that as a beneficiary of her mother's estate, she would have received a distribution but for the interference of the defendants.

It is not clear that New Jersey has recognized a cause of action for tortious interference with inheritance. That is particularly true where, as here, the claim is asserted not against a family member but a third party (here, a bank). See *McDonald v. Copperthwaite*, 2015 WL 519290, at *3-4 (D.N.J. Feb. 9, 2015); *In re Estate of Mechanic*, 2005 WL 975763, at *4 (N.J. Super. Ct. Ch. Div. Mar. 24, 2005) ("[T]here is no reported New Jersey case recognizing the tort of intentional interference of another individual's right to inherit against a professional.").

In any event, "a claim for tortious interference with an anticipated inheritance is unavailable when an adequate probate remedy exists." *Garruto v. Cannici*, 936 A.2d 1015, 1022 (N.J. Super. Ct. App. Div. 2007). Here, the injury

of which Cole complains is to her mother's estate, and any remedies may be obtained in the probate court proceedings. *See McDonald*, 2015 WL 519290 at *5 ("Plaintiff requests damages to compensate for the loss of her portion of the expected inheritance. Should the estate recover the missing funds, Plaintiff, as an heir, will be fully restored to the position that she was in prior to the alleged interference. The remedies available to Plaintiff in probate court are therefore adequate.").

Finally, of course, the allegation is not meaningfully connected to any wrongful act by Wells Fargo, which simply permitted one of two holders of a joint account to make a withdrawal, in accordance with the HELOC Agreement.

Accordingly, Cole may not pursue a claim for tortious interference with inheritance as against Wells Fargo. Summary judgment is granted in favor of Wells Fargo, and this claim, too, is dismissed.

### H. Intentional Infliction of Emotional Distress

In Count 10, Cole asserts a cause of action sounding in intentional infliction of emotional distress.

A claim for intentional infliction of emotional distress requires a showing of "intentional and outrageous conduct by the defendant, proximate cause, and distress that is severe." *Buckley v. Trenton Saving Fund Soc'y*, 544 A.2d 857, 863 (N.J. 1988). The conduct complained of must be "so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community. *Id.* (citing Restatement (Second) of Torts § 46 comment d). The distress suffered must be "so severe that no reasonable man could be expected to endure it." *Id.*

In this case, Cole has asserted that the distress caused by these incidents consists of anxiety, damage to her career, exacerbation of pre-existing post-traumatic stress, stress, invasion of privacy, and inability to sleep. (Interrogatory Response No. 1)

To begin with, no conduct by Wells Fargo that was even wrongful, let alone outrageous, has been shown.

Cole's distress, while regrettable, is not so severe that no reasonable person could be expected to endure it. Cole stated in her interrogatory responses that she had received treatment from a number of health care providers; at her deposition, however, she could not say which doctor she saw for what malady or how those treatments were connected to this case. (*Id.* at Response No. 14; Cole Dep. Tr. 222:19-226:19) Cole has introduced no relevant medical evidence. Additionally, Cole testified that with respect to her stress and emotional damages, she is "not putting it all on" Wells Fargo. (Cole Dep. Tr. 218:16-23; 222:16-17, 223:15-16) Cole conceded that Wells Fargo did not create her stress, but rather contributed to it, although she could not quantify by how much. (*Id.* 219:21-24)

Accordingly, I find that Cole has failed to raise a material issue of fact as to intentional infliction of emotional distress by Wells Fargo. Accordingly, summary judgment will be granted in favor of Wells Fargo, and this claim will be dismissed.

### I. **RESPA and TILA Violations**

Finally, Cole contends that Wells Fargo violated the Real Estate Settlement Procedures Act ("RESPA"), 12 U.S.C. § 2605, and the Truth in Lending Act ("TILA"), 15 U.S.C. § 1666(a).

With respect to the RESPA claim, Cole alleges that Wells Fargo failed to acknowledge receipt of and respond to her written communications within the statutory time limit. Under Section 2605, the servicer of a "federally related mortgage loan" is required to respond to a borrower's qualified written request ("QWR"), defined to be

> a written correspondence...that (i) includes, or otherwise enables the servicer to identify, the name and account of the borrower; and (ii) includes a statement of the reasons for the belief of the borrower, to the extent applicable, that the account is in error or provides sufficient detail to the servicer regarding other information sought by the borrower.

12 U.S.C. § 2605(e)(1)(B). A loan provider must respond to a QWR within thirty days of receipt. *Id.* at § 2605(e)(2). To bring a claim under RESPA, a plaintiff must demonstrate actual damages suffered as a result of the violation of

15

Section 2605 or statutory damages, where there is a pattern or practice of noncompliance with the statutory provision. *See Giordano v. MGC Mortgage, Inc.*, __ F. Supp. 3d __, 2016 WL 627344, at *2 (D.N.J. Feb. 16, 2016); *Hutchinson v. Delaware Sav. Bank FSB*, 410 F. Supp. 2d 374, 383 (D.N.J. 2006)("[A]lleging a breach of RESPA duties alone does not state a claim under RESPA. Plaintiffs must, at a minimum, also allege that the breach resulted in actual damages.").

The parties dispute whether Cole's written communications to Wells Fargo constitute QWRs sufficient to invoke the requirements of RESPA. The possible candidates consist of five letters, dated March 3, 2011, April 25, 2011, two dated April 28, 2011, and June 2, 2011. (Rosellini Cert., Ex. A; Bender Cert., Ex. C) I will assume that the letters sufficiently identify the borrower's name and account number.

Except for the letter of June 2, 2011, all set forth Cole's complaints that the HELOC account was closed improperly, that Cole was being denied access to the funds, and that the account was not reinstated. The reference is obviously to the temporary suspension of the HELOC in response to Cole's own complaint. The references to the count's being frozen seem to be in the nature of complaints, rather than requests for information.

In two of the letters, Cole also requests "original instruments of indebtedness"—in particular, "ink-signed" originals. This is not properly speaking a request for *information* about the loan; it is a "show me the note" demand, or perhaps a demand for surrender of the original bearer paper, to which Cole was not entitled. Nor is it a request for information about the balance, the payments, or the servicing of the loan.

Wells Fargo nevertheless responded to Cole's communications by letter dated September 7, 2011. (Hansen Cert., Ex. J) In that letter, Wells Fargo reserved its rights: it asserted that Cole's communications with respect to the HELOC account did not constitute QWRs because the line of credit is secured by a junior lien on the Property, and the provisions relating to QWRs relate

only to a "mortgage loan secured by a first lien." (*Id.*, citing 12 U.S.C. § 2605(e); Regulation X, 24 C.F.R. § 3500.21(a) & (e))

Wells Fargo nevertheless supplied copies of the Note and HELOC agreement. (Hansen Cert., Ex. J) Failure to supply originals, if that is the complaint, is not a failure to supply information.

Cole has alleged that she is due "any actual damages to the Plaintiff" and $1,000 in statutory damages for a pattern or practice of noncompliance. Other than her conclusory allegations, however, there is no evidence that Wells Fargo's late response or nonresponse to Cole's letters (assuming that occurred) caused her actual damage. Nor has she submitted evidence of a pattern or practice sufficient to enable Cole to recover statutory damages. Summary judgment is granted in favor of Wells Fargo on the RESPA component of Count 11.

The TILA component of Cole's claim would fail for similar reasons.[4] At any rate, Cole's papers say nothing specific about the TILA claim. Accordingly, summary judgment is granted in favor of Wells Fargo on the TILA component of Count 11 as well.

## V.   CONCLUSION

For the reasons set forth above, Wells Fargo's motion for summary judgment is **GRANTED**, and Cole's motion for summary judgment is **DENIED**. An appropriate Order follows.

Dated:  March 30, 2016

_____
HON. KEVIN MCNULTY, U.S.D.J.

---

[4]   Under the act, when a creditor provides an obligor with a statement of the obligor's account in connection with a home equity line of credit, and the obligor believes that the statement contains a billing error, the obligor is required to send a written notice of the error to the creditor and the creditor is obliged to respond to that communication. *See* 15 U.S.C. § 1666(a).